CARNELL HUNNICUTT *v.* COMMISSIONER OF
CORRECTION
(AC 23459)

Schaller, Flynn and DiPentima, Js.

Argued March 25—officially released June 1, 2004

*Deborah G. Stevenson*, special public defender, for the appellant (petitioner).

*Susann E. Gill*, senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Richard F. Jacobson*, former supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

FLYNN, J. The petitioner, Carnell Hunnicutt, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus.[1] On appeal, the petitioner claims that the court improperly concluded that his defense counsel was effective in representing him. The petitioner specifically contends that his coun-

---

[1] The petitioner did not timely appeal from the habeas court's denial of his first petition for habeas corpus. On November 18, 1999, the petitioner filed a second habeas petition alleging ineffective assistance of habeas counsel for failure to appeal from the denial of the original petition. At a pretrial hearing in that case, the habeas court, *Levine, J.*, rendered judgment restoring the petitioner's right to appeal from the denial of his first habeas petition. Thereafter, the petitioner filed this appeal from the denial of his first habeas petition. The petitioner did not seek certification to appeal, however, pursuant to General Statutes § 52-470 (b). As a result, this court made its own motion to dismiss the appeal. On November 3, 2003, the petitioner filed a motion with this court seeking permission to file a late petition for certification to appeal, and this court ordered that no action would be taken pending the filing and action on a motion for permission to file a late petition for certification with the habeas court. On January 8, 2004, the habeas court, *Langenbach, J.*, granted the petition for certification to appeal. Subsequently, on January 14, 2004, this court marked the matter off the court's own motion calendar and took judicial notice of Judge Langenbach's order of January 8, 2004, granting the petition for certification.

sel failed to investigate the petitioner's mental and physical health adequately prior to his entering a guilty plea to determine whether his guilty plea was knowing and voluntary. The petitioner also claims that the trial court's plea canvass was inadequate and that his plea was not knowingly and voluntarily entered. We affirm the judgment of the habeas court.

The following facts are pertinent to the resolution of this appeal. In April, 1994, the petitioner was arrested and charged with the murder of his wife in violation of General Statutes § 53a-54a. The petitioner made a statement to the police in which he confessed to stabbing his wife twenty-two times, which resulted in her death. His trial counsel, David Abbamonte, successfully moved the court that the petitioner undergo a competency examination to determine if he was fit to stand trial. On July 13, 1994, the court, *Maiocco, J.*, declared the petitioner competent to stand trial. After jury selection for his trial had begun, the petitioner expressed to Abbamonte that he wanted to enter into plea negotiations with the state. As a result of a plea agreement that was reached, he pleaded guilty to murder before the court, *Ronan, J.*, and was sentenced to a term of incarceration of twenty-seven years.

The petitioner filed a petition for a writ of habeas corpus alleging ineffective assistance of counsel.[2] The habeas court, *Hon. Thomas H. Corrigan*, judge trial

[2] Specifically, the petition alleged that trial counsel was ineffective in assisting him in his defense in that counsel (1) failed to inquire into the petitioner's drug and alcohol dependency at the time of the charged offense, (2) failed to advise him that the state would have the burden of disproving drug dependency if he could produce substantial evidence of it, (3) failed to advise him adequately of his options to enter a guilty plea or go to trial, (4) failed to advise him adequately of sentencing options and (5) failed to investigate potential defenses properly. On appeal, however, the petitioner has focused his claim on the alleged failure of his counsel to investigate the petitioner's mental and physical state at the time of the plea proceedings to determine whether the plea was knowing and voluntary.

referee, held that the petitioner did not show that his counsel's representation "fell below an objective standard of reasonableness." In reaching this conclusion, the court noted that the petitioner had stated during the plea canvass that his plea was freely and voluntarily made, that he was not under the influence of any alcohol, drugs or medication and that he understood the proceedings. The court further noted that the petitioner's answers to the court's plea canvass were appropriate and that his testimony at the habeas trial indicated that he had elected to take a sentence closer to the minimum for murder rather than risk being sentenced to the maximum. His actual twenty-seven year sentence was less than half of the sixty year statutory maximum sentence for murder. This appeal followed.

I

We first address the petitioner's claim that the trial court's plea canvass was inadequate because it did not substantially comply with Practice Book §§ 39-19 and 39-20. Specifically, the petitioner claims that the court failed to inform him that he was relinquishing his specific right to a *jury* trial and did not properly set forth the elements of murder. The petitioner did not raise this claim before the habeas court and also failed to raise it on direct appeal. Nevertheless, the petitioner argues that this claim is reviewable under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), which permits the review of certain unpreserved claims. Our Supreme Court has held that *Golding* review is not available for unpreserved claims of error raised for the first time in a habeas appeal. *Safford* v. *Warden*, 223 Conn. 180, 190 n.12, 612 A.2d 1161 (1992); see also *Cupe* v. *Commissioner of Correction*, 68 Conn. App. 262, 271 n.12, 791 A.2d 614 ("*Golding* does not grant . . . authority for collateral review and is . . . inapplicable to habeas proceedings"), cert. denied, 260 Conn. 908, 795 A.2d 544 (2002).

Accordingly, this court is not bound to consider a claimed error "unless it appears on the record that the question was distinctly raised at trial and was ruled upon and decided by the court adversely to the appellant's claim." (Internal quotation marks omitted.) *Copeland* v. *Warden*, 26 Conn. App. 10, 13–14, 596 A.2d 477 (1991), aff'd, 225 Conn. 46, 621 A.2d 1311 (1993). The issue of whether the trial court adequately canvassed the petitioner regarding his guilty plea was never raised before the habeas court, and it was not discussed in its memorandum of decision. We therefore decline to review the petitioner's claim regarding the alleged inadequacy of the trial court's plea canvass because "[t]o review the petitioner's [claim] now would amount to an ambuscade of the [habeas] judge." (Internal quotation marks omitted.) Id., 14.

## II

We next address the petitioner's claim of ineffective assistance of counsel, to which we apply the following well established standard of review. "In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Goodrum* v. *Commissioner of Correction*, 63 Conn. App. 297, 299, 776 A.2d 461, cert. denied, 258 Conn. 902, 782 A.2d 136 (2001). "Whether the representation a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Citation omitted.) *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 152–53, 662 A.2d 718 (1995).

The petitioner argues that his counsel failed to investigate his mental and physical health adequately imme-

diately prior to the plea proceedings to determine whether he was capable of entering a plea knowingly and voluntarily. He contends that had counsel conducted an adequate inquiry, he would have found that the petitioner was under the influence of various psychotropic drugs at the time the plea was entered and could not have made a voluntary or knowing plea. We disagree.

Although we do not review the petitioner's claims concerning the trial court's alleged noncompliance with Practice Book §§ 39-19 and 39-20, we nonetheless set forth certain additional facts from the record regarding the court's plea canvass because they reflect the petitioner's mental state and do not evince that it was overborne by the effects of drugs, as he now claims on appeal. At the commencement of the plea proceedings, the court asked the petitioner whether he had had enough time to speak with his counsel about his case, to which the petitioner replied, "[n]ot really." The court vacated the plea and permitted the petitioner to further consult with his counsel. When the proceedings resumed, the petitioner stated that he had had enough time to discuss his plea with his counsel. The court then asked the petitioner if he was pleading guilty freely and voluntarily, to which the petitioner replied that he was. The court further inquired whether the petitioner's counsel had apprised him of the elements of murder so that he understood what the state would have had to prove to convict him, and the petitioner responded that he had done so. When the court asked if he had any questions about the elements of the charge, the petitioner said he did not. The court listed to the petitioner the rights that he was relinquishing by pleading guilty, recited to him the facts that formed the basis of the petitioner's murder charge, explained to him the minimum and maximum sentence for the crime of mur-

der and asked if the petitioner sufficiently understood, to which he replied that he did.

In its plea canvass, the court also inquired whether the petitioner was currently under the influence of anything that might impair his judgment. Specifically, the court asked: "As you stand here right now, Mr. Hunnicutt, are you under the influence of any alcohol or drugs or medication or *any substance* that could affect your ability to understand what you are doing in pleading guilty?" (Emphasis added.) The petitioner stated that he was not. We see nothing in that record that would cause a reasonable person to question the petitioner's competence at the time of his plea.

At his habeas trial, the petitioner testified that at the time of his plea, he was being treated with psychotropic drugs, specifically Mellaril, Haldol, Sinequan and Proloxin, which had made him docile and caused him to be "confused" and "scared." The petitioner testified that he told the trial court at the time of his plea that he was not under the influence of any drugs or alcohol because he thought that the court was referring only to illegal drugs, and not to legal psychotropic drugs. The petitioner conceded on cross-examination that he could not produce any evidence, aside from his testimony, that he had been influenced by drugs at the time he entered his plea. The petitioner's trial counsel testified that he had had no indication that the petitioner was under the influence of psychotropic drugs during the plea proceedings and stated: "I assumed since [the petitioner] was in jail and . . . not under the influence of illegal drugs, I didn't see anything about him that led me to believe that he had any problems on the day of trial."

To prevail on a constitutional claim of ineffective assistance of counsel, the petitioner must establish both "(1) deficient performance, and (2) actual prejudice.

. . . Thus, he must establish not only that his counsel's performance was deficient, but that as a result thereof he suffered actual prejudice, namely, that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland* v. *Washington*, [466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. . . . Because both prongs of the *Strickland* test must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong." (Citations omitted; internal quotation marks omitted.) *King* v. *Commissioner of Correction*, 73 Conn. App. 600, 602–603, 808 A.2d 1166 (2002), cert. denied, 262 Conn. 931, 815 A.2d 133 (2003). In *Hill* v. *Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), the United States Supreme Court applied the two-pronged test set forth in *Strickland* to guilty plea negotiations, focusing on the application of the second prong requiring prejudice to be shown. "The second, or 'prejudice,' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id.

We conclude that the petitioner has failed to satisfy both prongs of the *Hill-Strickland* test for establishing ineffective assistance of counsel during plea negotiations. First, the petitioner has not demonstrated that his counsel's performance was deficient. Abbamonte testified that the petitioner had not appeared to be under the influence of any drugs on the day of the plea proceedings. The petitioner testified that he could not present any evidence that would corroborate what drugs he had been taking at the time and also admitted

that he could cite to no other evidence to illustrate the extent of any possible impairment that was caused by the drugs. In addition, the record before us reveals no indication that the petitioner was at all confused about the proceedings or about any of the questions that were posed to him.[3] Even if he had been taking certain psychotropic drugs at the time he entered his plea, he has not demonstrated that the effect of these drugs impaired his ability to understand the proceedings. When he stated that he needed more time to confer with his counsel, it was granted, and the plea proceedings did not resume until the petitioner was ready. He gave clear and cogent responses to the court's inquiries and at all times indicated that he understood the proceedings. We are not persuaded by the petitioner's argument that he believed that the court's question regarding whether he was under the influence of drugs was confined only to illegal drugs. The court's question clearly asked whether he was under the influence of drugs, alcohol or *any other substance* that would have impaired his ability to understand what he was doing. Psychotropic drugs clearly fall within the ambit of the court's inquiry. Because the record before us does not evince that the petitioner was actually impaired by the use of any psychotropic drugs, we cannot conclude that his counsel was deficient in failing to investigate his mental and physical health further.

Even if we were to conclude that the performance of the petitioner's counsel was deficient, the petitioner has not satisfied *Strickland*'s second prong, which requires him to demonstrate that the result of the proceeding would have been different if his counsel had

---

[3] At the habeas trial, counsel for the respondent, the commissioner of correction, asked the petitioner the following question: "[I]s there a transcript, where you claim to be hazy, not understanding, or where you stuttered, or tripped over words, or didn't understand what was being conveyed to you?" The petitioner responded: "No."

not been ineffective. In cases involving plea negotiations, the petitioner must show that but for his counsel's deficient performance, there is a reasonable probability that he would not have pleaded guilty and would have proceeded to trial. *Baillargeon* v. *Commissioner of Correction*, 67 Conn. App. 716, 722, 789 A.2d 1046 (2002). "Reasonable probability does not require the petitioner to show that counsel's deficient conduct more likely than not altered the outcome in the case, but he must establish a probability sufficient to undermine confidence in the outcome." (Internal quotation marks omitted.) Id.

The petitioner's testimony at his habeas trial with respect to his decision to plead guilty was as follows: "I'm from the South. And going ahead with all white jurors against a black man. I knew it was not going to be for me. And that is why I was going for it. It was for that reason. . . . And that's why it got me scared. . . . I'm not going to go through that." The following exchange, which occurred during the respondent commissioner of correction's cross-examination of the petitioner at his habeas trial, is also pertinent to this issue:

"[The Respondent's Counsel]: You were aware, am I not correct, that the maximum sentence for murder was sixty years to life?

"[The Petitioner]: Yes.

"[The Respondent's Counsel]: And the sentence that you received was twenty-seven years to life or twenty-eight years to life?

"[The Petitioner]: Twenty-seven. And it wasn't to life, though. . . .

"[The Respondent's Counsel]: Did that have an influence that you were going to get a lesser sentence? Did that have any influence on your plea?

"[The Petitioner]: Yes, it did.

"[The Respondent's Counsel]: What was the influence it had on your plea?

"[The Petitioner]: Well . . . my lawyer, Abbamonte, he kept stressing this to me to cop out. You get less time than if you go to trial. You are going to get sixty years. And that stuck in my mind."

The petitioner's testimony illustrates that he chose to plead guilty to reduce the amount of time that he would serve in prison and because he was convinced that he would not receive a fair trial after three white jurors had been selected for his trial. The petitioner has not alleged on appeal that his counsel was ineffective in failing to investigate a defense regarding his drug use at the time the crime was committed, which may have reduced his chance of conviction for murder at trial.[4] Rather, he claims that his counsel did not investigate whether he was under the influence of psychotropic drugs during the plea proceedings and that the petitioner did not understand what was happening. The petitioner does not assert that he would have proceeded to trial if he had not been under the influence of those drugs. The only argument that the petitioner makes in this vein is that if his counsel had been aware of the petitioner's mental state, counsel may not have recommended that he plead guilty *at that time.* In his brief, the petitioner states that he was prejudiced by the ineffective assistance of counsel because "if the information regarding [the petitioner's] continued medication were revealed through a proper investigation, it would

---

[4] The petitioner's counsel testified at the habeas trial that he had asked the petitioner whether he had been under the influence of drugs when he committed the crime. Counsel stated: "[The petitioner] maintained that he was . . . high at the time. But again, as I told him . . . there is nobody that can change the charge but the state's attorney's office, and they're not willing to offer a manslaughter defense. But he has to win at the trial . . . we did discuss it."

have . . . weighed in defense counsel's recommendation about *when* [the petitioner] should have entered a plea." (Emphasis added.) This does not satisfy the *Hill-Strickland* standard that requires the petitioner to show a reasonable probability that he would not have pleaded guilty at all and, instead, would have proceeded to trial.

We conclude that the petitioner has not provided us with a record showing a reasonable probability that he would have chosen to proceed to trial rather than plead guilty if his counsel had further investigated the petitioner's physical and mental health immediately prior to the plea proceedings. Nor does the record undermine confidence in the outcome of the plea proceedings.

The judgment is affirmed.

In this opinion the other judges concurred.